# DENVER BRICK AND M'F'G. CO. *v.* McALLISTER.

(*Supreme Court of Colorado, December 5th, 1882—Error to the County Court of Arapahoe County.*)

1. TRUST DEED, REFORMATION OF AT SUIT OF ASSIGNEE. The assignee of a debt secured by trust deed, holds the same equities that the original creditor held, and a bill by such assignee for the reformation of the trust deed, containing allegations which would be good if made by the assignor, is not demurrable on the ground of the assignment.

2. SAME—EXECUTED BY OFFICERS OF, INSTEAD OF CORPORATION. In case of note and trust deed executed by the officers of a corporation as such, the evidence showing conclusively that the debt was due by the corporation, and the title to the property conveyed in the trust deed was in the corporation, and that the intention was to bind the corporation by the execution of the note and trust deed : *Held*, a Court of equity may interpose, correct the mistake, reform the deed, foreclose the same, and enforce the lien.

3. FORECLOSURE—TIME TO DEBTOR. · In such case, under Sec. 1428 Gen. Laws, it is within the discretion of the Court to fix the time within which the amount found due shall be paid before sale takes effect; and the equities of the case furnish the proper guide for such discretionary period.

4. SAME.—REDEMPTION. Where the creditor holding such trust deed seeks foreclosure, and prays that the same be treated as a mortgage, the decree of foreclosure must embody right of redemption.

5. COMPOUND INTEREST—Not allowed under the statute of the State.

STONE, J. This was an equitable proceeding in the Court below for the reformation and foreclosure of a trust deed. The bill of McAllister, the complainant below, alleges that the defendant, the Denver Brick Manufacturing and Building Company, a corporation, on the 10th day of March, 1875, was the owner in fee of certain lots in the city of Denver; that on said date the other defendants, McFarland, Epley and Neely, were officers and directors of said company ; and that, acting on behalf of said company, they borrowed, on said date, of one Wheeler, the sum of $1,200, and executed a note therefor to said Wheeler, and signed the same as officers and directors of said company ; and that, to secure the said note, the said officers and directors executed to the complainant, as trustee, a trust deed of the said property of the company, signing the same as officers and directors of the company in like manner as in the note, both of which instruments are set out in the

bill. That the said loan was made solely on the security of the property of the company so conveyed, and that the defendant intended and believed in good faith that they were executing the note and trust deed of the company, and not as the individual acts of said officers and directors named; that the money was borrowed by and used in the interest and for the purposes of said company, but that by inadvertence and mistake the said note and deed of trust were executed by said officers and directors in their individual names under the description aforesaid, and not in the corporate name of the company That afterwards the said Wheeler sold and assigned the said note to McAllister, the complainant; that no part of said note had been paid except the sum of $162, being nine months' interest thereon; that no other rights or incumbrances upon said property had intervened; and thereupon the bill prays that the deed be decreed to be the deed of the said company according to the intent of the parties in interest, and that the same be held to be a mortgage in law and equity, and be foreclosed as such by the usual decree for the sale of mortgaged premises, and that the equity of redemption be barred, and for such other and further relief as the nature of the case may require.

To this bill defendants demurred, and the overruling of the demurrer is made the ground for the first assignment of error. The principal objection made by the demurrer is, that there was no "privity or mutuality" between the complainant and respondent company in the Court below to entitle the complainant to the relief sought. That to warrant the reformation of a written instrument on the ground of mistake, such mistake must be alleged and shown to be the mutual mistake of the parties; that it must appear that both parties have done what neither party intended. In view of this, it is contended that the complainant, McAllister, was a stranger to the contract; that, having nothing to do with the making of the contract, nor interested therein, he had no intention respecting the matter, and that, therefore, the essential element of mutuality of mistake is wanting in the case.

While the requirements of the bill are correctly laid down by counsel, the position assumed respecting the complainant

here we think is not sustainable.   It is not denied that, under
the allegations of the bill, the relief prayed might properly be
granted if the *cestue qui trust*, the original creditor, were him-
self the complainant.   But the complainant here stands in the
shoes of his assignor Wheeler.   It is the settled doctrine in
equity that the assignment of a debt secured by mortgage or
deed with power of sale, as a trust deed, carries the security
with it as an equitable estate annexed, and vests in the assignee
the same rights and powers respecting it as were possessed by
the assignor.   The debt is the principal thing, and the security
attaches and passes in the same condition and to the same ex-
tent as an incident, unless otherwise limited by the terms of
assignment.   *Keyes* v. *Wood,* 21 Vt., 331; *Sargent* v. *Howe,* 21
Ill., 148; *Sangster* v. *Love,* 11 *Iowa,* 580; *Anderson* v. *Baumgard-
ner,* 27 Mo., 80; *Slee* v. *Manhattan Co.,* 1 Paige, 48; *Johnson* v.
*Hart,* 1 Johnson's Cases, 320; 4 Kent Com., 147; *Gale's Execu-
tor* v. *Morris,* 29 N. J. Eq., 222; *Fassett* v. *Mulock,* 5 Col., 466.

Complainant, therefore, cannot be said to be a stranger to
the contract, but on the contrary, for all purposes of this suit,
is as much a party to the contract and in privity therewith,
as though he were the original creditor.   The bill alleging a
mistake in the making of the instruments, pointing out the
character of the mistake and praying the necessary correction
to make the deed effectual in carrying out the original intent
of the parties thereto, is, we think, sufficient, and there was no
error in overruling the demurrer.   *Hearne* v. *Marine Ins. Co.,*
20 Wall., 490; *West* v. *Menard Co. Agr'l Board,* 82 Del., 205;
*Hancock* v. *Yunker,* 83 Ill., 208; *Wood* v. *Wheeler,* 93 Ill., 153.

We will now pass to the fifth and sixth assignments of error,
under which it is contended that the decree for the reformation
of the deed is not supported by the evidence.

Upon a careful examination of the evidence we are con-
vinced that it warrants the decree for reformation of the deed
as prayed by the bill.   The business was transacted by agents
of the principals on both sides.   Wheeler, who loaned the
money, lived in Pennsylvania, and the loan was made by an
agent here.   The company for which the money was borrowed,
being a corporation, necessarily acted through agents.   The
money was used by and for the company through its officers

as such agents, and by them the property of the company was proposed and sought to be conveyed in trust to secure the payment of the money thus procured and used. From the very nature of the transaction and the fact that the fee of the land furnishing the security was in the company, as well as by the testimony of the officers of the company who signed the deed, it seems evident that the intent was to make the note and trust deed the instruments of the corporation for whom the debt was contracted. The persons who signed the instruments were the proper officers of the corporation to execute the same on behalf of the corporation, but not having signed the instruments in the name of the company, it was a defective execution—a mistake in the formal and legal mode of carrying out the intent of the parties.

Upon such a state of facts, the relief sought by the bill was properly granted, and although upon the rule that equity treats what is agreed to be, and ought to be done, as done, it was unnecessary to formally decree a preliminary reformation of the deed at that stage of the case, after default in payment and when the orders for reformation and foreclosure were made *eo instanti*, there was no error in the decree in this respect. *Miller* v. *R. & W. R. R.*, 36 Vt., 452, 500; *Slee* v. *Officers and Directors of Manhattan Co.*, 1 Paige, 48; *Tollett* v. *Tollett*, W. & T. Leading Cases Eq.; 2d Leading Cases Eq., 681; Kerr on Fraud and Mistake, 418, and cases cited; Story's Eq. Juris., Secs. 153, 158.

Going back to the second assignment, upon which it is insisted that the Court erred in limiting the time in which the plaintiff in error was decreed to pay the amount found due, before sale of the property, in support of which the case of *Packard* v. *King*, 3 Col., 211, is cited, it is only necessary to say, in view of our conclusions upon the third assignment hereafter noticed, that the ruling in *Packard* v. *King*, does not apply. In cases where such redemption from sales is allowed under the provisions of section 1428 of the General Laws, it is within the discretion of the Court to fix the time within which the amount found due shall be paid before the order for sale takes effect, and the equities of the cases furnish the proper guide for such discretionary period. *Nippel* v. *Hammond*, 4 Col., 220.

29

The third error assigned is, that the Court did not allow a redemption from sale according to the statutory provision applicable to such case.

The statute referred to is section 1428 of the General Laws, which is as follows:

"In all cases where lands shall be sold under and by virtue of any decree of a Court of equity for the sale of mortgaged lands, it shall be lawful for the mortgagor of such lands, his heirs, executors or administrators, to redeem the same in the manner prescribed in this chapter for the redemption of lands sold by virtue of executions issued upon judgments at common law."

And the section further provides that judgment creditors may redeem under decrees in like manner.

Counsel for complainant argues that the instrument of conveyance being in form a trust deed and not a mortgage deed proper, it is not within the meaning of the statute, and hence the lands not subject to redemption after sale. Without regarding it necessary to enter upon the wide field of discussion and authorities concerning the nature of trust deeds made for the security of debts, as contradistinguished from mortgage deeds, further than to say that such instruments are in the nature of a mortgage with power of sale, are made to accomplish the same object, and are within the equitable jurisdiction of the Courts when applied to as a cumulative and concurrent remedy for enforcement, we may decide this question wholly upon a consideration of the allegations and prayer of the bill.

Complainant therein claims it to be a mortgage, and prays that it be so treated and foreclosed, in the following language:

"Wherefore, he says that the said trust deed is a mortgage in law and equity, and in good conscience, in the hands of your orator, and should be foreclosed as such in his behalf, * * * and that said trust deed be reformed and amended so as to speak the intention and meaning of said parties, that it is * * * the instrument of said corporation, *and that the usual decree be made for the sale of the mortgaged premises aforesaid,* and for the payment," etc.

It is true that thereafter, in the closing part of the bill it is prayed that the Court may decree that the right of redemption after sale be barred, but this cannot be held to control the

decree when the deed was claimed by complainant as a mortgage, prayed to be treated as a mortgage, and was in fact so treated by the Court, which uses the following language in the decree: "That the said complainant is entitled to have said trust deed foreclosed as an equitable mortgage on said lots;" and a special Master in Chancery is thereupon appointed by the decree to make the sale. It was within the power of the Court, under a proper bill, to have decreed that the trustees named in the deed, or one appointed by the Court for the purpose, should proceed to enforce the remedy by sale in accordance with the terms therein stipulated, and thus cut off the redemption, or, having treated it as a mortgage, to have decreed the foreclosure subject to the right of redemption which attaches by virtue of the statute we have quoted. The Court did neither.

The complainant, having waived his right of sale under the terms and conditions of the trust deed, under which no equity of redemption would have attached, and having, by the prayer in his bill, asked that the instrument be treated and foreclosed as a mortgage, *and that the usual decree be made for the sale* of said mortgaged premises, the decree should have been the usual statutory decree, giving a right of redemption.

We see no reason why the Court, by its decree, should have denied to the defendant a right which the complainant, by his bill, voluntarily tendered, and the denial of such right was error.

The fourth error assigned is for excess in the sum found due. The Court found, as the amount due, the sum of $2,000, and decreed payment therefor. Upon a proper computation of interest we find that this was error. The note was dated March 10, 1875, and the decree was rendered November 30, 1878. The interest for this length of time, at one and one-half per cent. per month, the rate stipulated in the note, amounts to $804, which, added to the principal of $1,200, makes $2,004. From this is to be deducted the sum of $162, admitted in the bill to have been paid, and there is left $1,842 as the correct sum for which the decree should have been rendered.

The record fails to show whether this amount of $2,000 was fixed through the mistake in computation or by reckoning the

interest in some other mode than that as above indicated. Since the note provides that the interest is to be paid quarterly, the sum found, if otherwise than by mistake, must have been reached by computing interest upon each sum of the quarterly accrued interest, and adding the several amounts to the principal; in other words, compounding the interest; and we understand counsel for defendant in error to contend that a liberal construction of the statute warrants such interest upon interest due.

The statute of this State relating to interest declares that:

"Creditors shall be allowed to receive interest when there is no agreement as to the rate thereof, at the rate of ten per cent. per annum for all moneys after they come due, on any bond, bill, promissory note or other instrument of writing, or any judgment," etc.   Gen. Laws, Sec. 1367.

It may be true that interest, when it has become payable, is "money become due," but we think that a fair construction of this statute will allow the language to cover only interest on the principal, within the Legislative intent, especially in view of the provision allowing any rate to be agreed upon.   In ruling upon this question, under a similar statute, the Supreme Court of Illinois, in the case of *Leonard* v. *Adm'r of Villars*, 23 Ill., 377, say:

"To compute interest upon interest after its maturity, has by all Courts, whether exercising equity or common law jurisdiction, been held to be compound interest, and in violation of law.   This question is one that has been frequently presented, and it is believed, as uniformly been held to be unauthorized. We are not aware of any well considered case which has held that there is an implied legal or moral obligation to pay interest upon unpaid interest after its maturity."

This ruling is affirmed in *Barker* v. *International Bank*, 80 Ill., 96, and this we consider the sound rule, and is in accordance with the principle enunciated by this Court in the case of *Fillmore* v. *Riethman*, decided at the December term, 1881. 2 Col. Law Reporter, 399.

It appears that a sale was had under the decree on the 21st of January, 1879; that the property was purchased at such sale for the sum of $100, which was applied on the costs, and that no part of the sum decreed due has been paid.

For the errors we have pointed out, in respect to the right of redemption of the lands after sale, and the excess in the amount decreed to be due, the decree will, to that extent, be reversed, the sale thereunder set aside, and the case remanded with direction to the Court below to enter up a decree for the proper amount, and for a sale of the property in accordance with the usual statutory mode for the sale of mortgaged premises under decrees of foreclosure.

*Decree reversed.*

*France & Rogers*, for plaintiff in error.

*E. Miles*, for defendant in error.